UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Kimberly S. Rorick, | Case No. 1:14-cv-312 |
| Plaintiff, | |
| vs. | |
| Marc H. Silverman, D.D.S., et al., | |
| Defendants. | |

**ORDER**

Before the Court is Defendants' motion for summary judgment. (Doc. 37) Plaintiff opposes the motion (Doc. 40), and Defendants have filed a reply (Doc. 42). For the following reasons, the Court will deny in part and grant in part Defendants' motion.

**FACTUAL BACKGROUND**

Kimberly Rorick's amended complaint against Marc Silverman and Silverman Dental, LLC (hereinafter collectively referred to as "Silverman") alleges that Dr. Silverman negligently performed dental work for her between 2001 and 2005. (Doc. 6) Rorick alleges that Silverman performed four root canal procedures on her, and that she "began to experience headaches[,] [and] also experienced tooth decay and infections with these same teeth, and eventually lost two of these teeth." (Compl. ¶8) She received treatment from another dentist (Dr. Donald Kelley) on November 20, 2012, when she alleges that she "... learned for the first time that [her] tooth decay, infections, and loss of her two teeth, stemmed from Defendant Silverman's negligent performance of four root canal procedures. Specifically, Defendant Silverman had not completed the root canal procedures completely or correctly and had left a piece of a file in one of her

teeth while performing the root canals." (Compl. ¶9) She further alleges that after her 2012 treatment with Dr. Kelley, she no longer suffered from the headaches she had suffered over the previous eleven years. (Id. at ¶10)

Silverman moved to dismiss the complaint, arguing that her claims were time-barred. This Court denied the motion to dismiss, finding that the applicable Ohio statute makes an explicit exception for foreign objects left in a patient. The Court found that Rorick's allegations plausibly alleged that she could not have reasonably discovered the foreign object, as opposed to the alleged negligence in the method of performing the root canals, prior to November 2012. (See Doc. 24 at p. 9.) The parties then conducted discovery, and Silverman now seeks summary judgment.

In the motion, Silverman notes that Rorick's expert, Dr. Green, opines that Silverman's treatment with respect to the root canal performed on tooth #18 (which occurred on or around April 18, 2001) fell below the standard of care. Green cites records from Dr. Kelley, who treated Rorick on November 20, 2012 and retrieved "an instrument approximately 4mm long" from tooth #18. (Doc. 37-1, PAGEID 198) Silverman argues that Rorick has no expert testimony establishing that anything Silverman did regarding the root canal caused Rorick's pain and headaches, which she testified lasted for 11 years. Silverman also argues that Rorick lacks clear and convincing evidence that she could not have reasonably discovered the piece of metal in her tooth before November 20, 2012. In addition, Silverman seeks judgment on Rorick's spoliation of evidence claim, arguing that she lacks evidence of any willful or intentional destruction of records. Rorick disagrees, generally contending that the evidence and her testimony present a jury question on whether she could have

reasonably discovered the foreign object before seeing Dr. Kelly, about Silverman's alleged malpractice, and her spoliation claim.

Standard of Review

The court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An assertion of a undisputed fact must be supported by citations to particular parts of the record, including depositions, affidavits, admissions, and interrogatory answers. The party opposing a properly supported summary judgment motion "'may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial.'" Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (internal quotation omitted).

The party bringing the summary judgment motion has the initial burden of informing the district court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. Mt. Lebanon Personal Care Home, Inc. v. Hoover Universal, Inc., 276 F.3d 845, 848 (6th Cir. 2002). Once that occurs, the party opposing the motion may not "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact," and must make an affirmative showing with proper evidence in order to defeat the motion. Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Electric Industries Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The court must construe the record in the light most favorable to the non-

movant, and draw all justifiable inferences in the non-movant's favor. United States v. Diebold Inc., 369 U.S. 654, 655 (1962).

The court's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249. The court must assess "whether there is the need for trial — whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. at 250. "If the evidence is merely colorable, ... or is not significantly probative, ... the court may grant judgment." Anderson, 477 U.S. at 249-50 (citations omitted).

Rorick's Negligence/Malpractice Claim

The relevant Ohio statute of limitations, Ohio Rev. Code 2305.113, states in pertinent part:

> (A) Except as otherwise provided in this section, an action upon a medical, dental, optometric, or chiropractic claim shall be commenced within one year after the cause of action accrued.
> ...
>
> (C) Except as to persons within the age of minority or of unsound mind as provided by section 2305.16 of the Revised Code, and except as provided in division (D) of this section, both of the following apply:
>
> (1) No action upon a medical, dental, optometric, or chiropractic claim shall be commenced more than four years after the occurrence of the act or omission constituting the alleged basis of the medical, dental, optometric, or chiropractic claim.
>
> (2) If an action upon a medical, dental, optometric, or chiropractic claim is not commenced within four years after the occurrence of the act or omission constituting the alleged basis of the medical, dental, optometric, or chiropractic claim, then, any action upon that claim is barred.
>
> (D) (1) If a person making a medical claim, dental claim, optometric claim, or chiropractic claim, in the exercise of reasonable care and diligence,

> could not have discovered the injury resulting from the act or omission constituting the alleged basis of the claim within three years after the occurrence of the act or omission, but, in the exercise of reasonable care and diligence, discovers the injury resulting from that act or omission before the expiration of the four-year period specified in division (C)(1) of this section, the person may commence an action upon the claim not later than one year after the person discovers the injury resulting from that act or omission.
>
> (2) If the alleged basis of a medical claim, dental claim, optometric claim, or chiropractic claim is the occurrence of an act or omission that involves a foreign object that is left in the body of the person making the claim, the person may commence an action upon the claim not later than one year after the person discovered the foreign object or not later than one year after the person, with reasonable care and diligence, should have discovered the foreign object.
>
> (3) A person who commences an action upon a medical claim, dental claim, optometric claim, or chiropractic claim under the circumstances described in division (D)(1) or (2) of this section has the affirmative burden of proving, by clear and convincing evidence, that the person, with reasonable care and diligence, could not have discovered the injury resulting from the act or omission constituting the alleged basis of the claim within the three-year period described in division (D)(1) of this section or within the one-year period described in division (D)(2) of this section, whichever is applicable.

This statute plainly states to be timely filed, Rorick must satisfy Section (D)(2), **and** meet the clear and convincing evidence standard set forth in Section (D)(3). "Clear and convincing evidence is that measure or degree of proof which is more than a mere preponderance of evidence, but not to the extent of such certainty as is required beyond a reasonable doubt in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." State ex rel. Ohio Cong. of Parents & Teachers v. State Board of Education, 111 Ohio St.3d 568, 674 (Ohio 2006)(internal citations and quotations omitted).

As this Court observed in denying Silverman's motion to dismiss, Ohio Rev.

Code 2305.113(D)(2) creates an exception from the four-year statute of repose for "foreign object" cases. This statutory exception mirrors long-standing Ohio law recognizing the discovery rule exception to the malpractice statute of limitations when foreign objects are left in a patient's body. See, e.g., Simmons v. Riverside Methodist Hospital, 44 Ohio App.2d 146, 150-151 (Ohio App. 1975), concluding that Ohio law at that time limited application of the discovery rule only to situations involving a foreign object found after a surgical procedure. In a case arising under a prior version of the statute of limitations, the Ohio Supreme Court held that in order to trigger the one-year discovery period,

> ... there [must] be an occurrence of a 'cognizable event' which does or should lead the patient to believe that the condition of which the patient complains is related to a medical procedure, treatment or diagnosis previously rendered to the patient and where the cognizable event does or should place the patient on notice of the need to pursue his possible remedies. ... [W]e do not believe that a patient must be aware of the full extent of the injury before there is a cognizable event. It is enough that some noteworthy event, the 'cognizable event,' has occurred which does or should alert a reasonable person-patient that an improper medical procedure, treatment or diagnosis has taken place.

Allenius v. Thomas, 42 Ohio St.3d 131, 133-134 (1989). The "cognizable event" in that case was when plaintiff was told that she had invasive cancer: "This knowledge that her cancer had become more extensive after she had cancer in situ, did or should have led [her] to believe that the follow-up treatment of [defendants], which only consisted of taking Pap smears, was negligently rendered. The diagnosis of invasive cancer did or should have put [plaintiff] on notice to pursue her possible remedies against [defendants]." And in Flowers v. Walker, 63 Ohio St.3d 546, 549 (1992), the Supreme Court noted that constructive knowledge of facts, not a plaintiff's actual knowledge of

the legal significance of those facts, starts the allowable period under the discovery rule:

> The "cognizable event" rule was adopted by this court to put plaintiffs in malpractice cases on the same playing field as plaintiffs in other tort cases. A plaintiff in a malpractice case can be injured without knowing it (for example, where a sponge has not been removed during an operation). Further, one can discover an injury without having reason to believe that malpractice has been committed (for example, a heart attack). Hence we have delayed the running of the statute of limitations from the traditional date of injury to the date a "cognizable event" is discovered. We did not, however, intend to give medical malpractice plaintiffs an advantage over other tort plaintiffs. ... To put it plainly, the "cognizable event" rule was adopted to eliminate the unfairness to medical malpractice plaintiffs, not to favor them and excuse them from the duty to identify the tortfeasor once there is reason to know a tort has been committed.

Id. at 550.

Silverman contends that Rorick cannot satisfy Section 2305.113(D)(2) as a matter of law, because she could have and reasonably should have discovered the foreign object (piece of a metal file in her tooth) long before November 20, 2012. Rorick testified that after the root canal was performed, she started experiencing regular, almost daily headaches that began within a year of the root canal. Sometimes the headaches were severe enough that she had to lie down or put her head down on her desk, which occurred a few times a week. (Rorick Dep. at 101) She did not experience pain in tooth #18 after the root canal and through 2005, when she stopped treating with Silverman. She testified that she did not associate the ongoing headaches with Silverman's performance of the root canal. (Id. at 96) Rorick spoke to her primary care doctor about her headaches, and she took over the counter pain medication (Advil, Aleve or Tylenol), which she said relieved her headache pain. (Id. at 99-100, 106). She testified that she did not see a doctor very often in the years after the root canal, describing herself as a "generally healthy person." (Id at 109-110) She "just learned to

live with" the headaches.  (Id. at 112-113)  She was never referred to a specialist, nor did she ask for a referral, because "I trusted my doctor."  (Id. at 123-124)

She continued to see Dr. Silverman until sometime in 2005, when she consulted him regarding a tooth in her top left jaw.  She testified that she "almost died" from a root canal Silverman performed on that tooth, when he "... pushed the root up into my sinus cavity.  He tried to retrieve it by cutting away bone. ... And [he] further pushed it up into my sinus cavity ... at which point the procedure was ended, and I was referred to Dr. Perry for emergency oral surgery ..."  (Id. at 77-78)  Rorick did not think about filing a lawsuit as a result of this incident, and she just decided to find another dentist.  She could not recall questioning any of Silverman's other dental work at that time.  (Id. at 88-90)  Rorick also testified that other providers took x-rays of tooth #18 over the years after Silverman's root canal, but no one ever told her that a piece of a file could be seen on an x-ray.  Dr. Kelly removed it when he retreated tooth #18 in November 2012.  (Id. at 133, 144)

Silverman cites Hensley v. Durrani, 2013-Ohio-4711 (Ohio 1st Dist. App. 2013), affirming summary judgment granted to a physician who negligently performed surgery on plaintiff's cervical spine.  Plaintiff began complaining of swallowing problems shortly after her surgery, and she told her physician that her difficulty started right after the surgery.  The court of appeals held that the "cognizable event" was the date her family physician observed that there was a lot of scar tissue in her throat, and plates and rods installed during the surgery had to be removed from her neck because they were trapping food.  Her lawsuit was filed more than a year later, and the court held it was untimely.  In that case, the cognizable event was directly related to the body part on

-8-

which the surgeon had operated. Moreover, the plaintiff had undergone a subsequent procedure to remove some of the objects that the surgeon had implanted. That rationale is also evident in Allenius, as the plaintiff had been treated for invasive cancer and alleged that her follow-up care for that condition was negligent.

The Court finds that a more analogous case to this one is Sparks v. Blanchard Valley Hospital, 72 Ohio App. 3d 830, 596 N.E.2d 541 (Ohio Ct. App. 1991). In that case, the plaintiff fell and cut his shoulder on some broken glass. He went to a hospital, where a nurse cleaned the wound and a physician placed stitches in the cut. He told plaintiff to return in a few weeks to have the stitches removed. Plaintiff worked out of state on a regular basis, and he left Ohio shortly after the injury. He did not return to the hospital and instead, removed the stitches himself. Three months later, he consulted a physician in West Virginia because his shoulder still caused him pain. He told the doctor about the cut but did not mention the broken glass. The doctor diagnosed him with bursitis. Eight years later, after experiencing intermittent shoulder pain, he consulted with another physician who also diagnosed bursitis. Upon re-examination, however, that doctor took x-rays and discovered pieces of glass in his shoulder, which were removed. Plaintiff then filed suit against the first hospital and physician, alleging negligent treatment. The trial court granted summary judgment to the defendants, finding that a reasonable person would have had a physician remove his stitches, or would have fully disclosed the fact that his original injury involved broken glass. Either of those, in the court's view, would have led to the more timely discovery of the glass particles.

The court of appeals reversed, applying the three-prong test articulated by the

Ohio Supreme Court in Hershberger v. Akron City Hosp., 34 Ohio St. 3d 1, 516 N.E.2d 204 (Ohio 1987) for determining a "cognizable event" that triggers the statute: "(1) when the injured party became aware, or should have become aware, of the extent and seriousness of his condition; (2) whether the injured party was aware, or should have been aware, that such condition was related to a specific professional medical service previously rendered him; and (3) whether such condition would put a reasonable person on notice of need for further inquiry as to the cause of such condition." Sparks, 72 Ohio App. 3d at 833-834.  The court found that the trial court improperly decided what a "reasonable person" would have done in Spark's position, and then faulted Sparks for not doing so.  The court of appeals noted that the proper approach is to "take the facts as they are and apply the three-prong test without speculation about what the injured party should have done." Id. at 834.

      Here, taking "the facts as they are" and construed in the light most favorable to Rorick, the Court cannot conclude as a matter of law that Rorick reasonably should have discovered the piece of metal prior to its removal in November 2012.  The onset of headaches about a year after the root canal was performed is not so clearly connected to that dental work that the Court could conclude that the headaches were the "cognizable event" triggering Rorick's duty to investigate whether her headaches were caused by something Silverman did or failed to do.  Rorick testified that she reported her headaches to her physician, who did not refer her for a specialist's examination; and she testified that simple over-the-counter pain relievers controlled her headache pain.  Unlike the plaintiff in Hensley, involving an almost immediately-occurring problem in the very area on which the physician operated, Rorick's headaches began about a year

after the root canal, and were not associated with any pain she claimed to experience in tooth #18. And subsequent x-rays of tooth #18 did not reveal the presence of a foreign object. Nor is Rorick's description of the 2005 root canal, which resulted in emergency oral surgery, the cognizable event that should have put her on notice of a connection between tooth #18 and her headaches. Silverman argues that Rorick was dissatisfied with Silverman and discontinued her relationship with him after 2005, suggesting that she also should have discovered whether she had a viable claim against Silverman. Rorick testified that she did not consider a lawsuit at that time, and simply wanted to find a new dentist. A jury could conclude that her decision to forego any investigation of Silverman's other treatment was unreasonable, but could also conclude that Rorick's explanation of how she felt and what she did with respect to tooth #18 was reasonable in view of all of the circumstances.

Silverman also argues that Rorick cannot prove a causal link between the alleged malpractice regarding tooth #18, and her headaches. In order to establish a medical malpractice claim, Rorick must present evidence regarding (1) the standard of care, (2) defendant's failure to meet that standard, and (3) a direct causal connection between the medically negligent act and the injury sustained. Kerpelis v. Pfizer, Inc., 2004-Ohio-3049 (Ohio App. 2004), citing Bruni v. Tatsumi, 46 Ohio St.2d 127, syllabus (1976). Expert testimony on the standard of care and a defendant's failure to adhere to the standard is typically required, unless the lack of skill in rendering care is so clear and apparent that it is within common knowledge and understanding of a jury. Buerger v. Ohio Dept. Of Rehab. & Corr., 64 Ohio App.3d 394, 399 (Ohio App. 1989). Expert testimony is also required to establish a causal link between the defendant's alleged

malpractice and plaintiff's claimed injury. Shumaker v. Oliver B. Cannon & Sons, Inc., 28 Ohio St.3d 367, 369 (1986). The expert's opinion must be expressed in terms of probability, not possibility; while no "magic words" are required, the opinion must be couched within the reasonable degree of certainty. Ochletree v. Trumbull Mem. Hosp., 2006-Ohio-1006, ¶43 (Ohio App. 2006).

    Rorick's complaint alleges she sustained injuries including headaches, tooth decay, infections, and the loss of two teeth. However, her expert Dr. Green has offered an opinion only with respect to tooth #18 and the piece of metal found in that tooth. Rorick admitted at her deposition that the only injury for which she seeks damages based on the April 2001 root canal on tooth #18 is for headaches that she began experiencing after that procedure. (Rorick Dep. at 143-144, and 156) Dr. Green's most recent affidavit, filed with Rorick's response to the summary judgment motion, supplements the certificate of merit he provided in this case. In the affidavit he offers the following opinion:

> 5. The treatment provided by Dr. Donald S. Kelley (Kelley) to Rorick, which included completion and repair of the defective root canal Silverman performed on tooth #18, and removal of the 4mm broken dental file left in tooth #18 was treatment that was required, in my expert opinion, as a direct and proximate result of Silverman's original work, which fell below the standard of care for dentistry in the state of Ohio, on tooth #18 in April 2001.

(Doc. 40-1 at ¶5) Rorick has not offered any expert opinion or testimony regarding the alleged causal link between the headaches she described, and the 2001 root canal performed on tooth #18. Rorick does not argue that expert testimony is not needed on this issue; she simply argues that Dr. Green's affidavit is sufficient to show a causal link between the 2001 root canal and the 2012 root canal. (See Doc. 40 at 4) But that is not

sufficient to show causation with respect to her headaches. The Court concludes that Rorick is precluded from seeking damages for headaches she alleges were caused by Silverman's malpractice, due to a lack of expert opinion on the issue.

The Court therefore denies Silverman's motion with respect to the timeliness of Rorick's malpractice/negligence claim. The motion is granted to the extent that Rorick is barred from seeking to recover compensatory damages for her alleged headaches.

Spoliation Claim

Rorick also brings a spoliation claim against Silverman, alleging that he intentionally destroyed some of her dental records. Ohio law recognizes an independent cause of action for spoliation of evidence. The elements of such a claim are: (1) the existence of pending or probable litigation; (2) the defendant's knowledge of such litigation; (3) defendant's willful destruction of relevant evidence; (4) an actual disruption of a claimant's litigation due to that willful destruction; and (5) damages flowing from the spoliation. Smith v. Howard Johnson, 67 Ohio St.3d 28, 29 (Ohio 1993).

Silverman argues that Rorick cannot show that Silverman's alleged destruction of dental records was willful, or that such destruction interfered with her lawsuit. Rorick admitted that she has no personal knowledge of anything Silverman did regarding the alleged destruction of dental records. She testified: "I know records are missing. I don't know why." (Rorick Dep. at 147) Silverman was questioned at his August 5 deposition about whether he has x-rays of tooth #18 taken after the April 2001 root canal. He testified that it is possible that x-rays are located on one or two older laptops that he kept after his practice got new computers and changed to a new software system,

sometime around 2003. Silverman explained that he recently asked his IT consultant to try to access the records on that computer, and he was unable to do so. Defense counsel then explained that given that situation, "We can agree or come to some agreement using a forensic guy to try to access the data. So we don't know the extent of accessibility or not, but certainly we're willing to work with you to come up with a solution and an effective way to try to [access the computer]. After his IT guy attempted to access it and couldn't, I instructed a litigation hold and nothing has happened to it since. He actually brought it with him today if you want to look at it." (Silverman Dep. at 40)

Rorick argues that Silverman's "utter failure" to properly maintain his computer-stored patient records supports a reasonable inference that he intended to deprive Rorick of her records. Rorick cites no authority suggesting that a "failure to maintain" access to an aging laptop is tantamount to intentional or willful destruction of records. Moreover, Silverman notes that even proof of records destruction is not sufficient by itself; a plaintiff must come forward with some evidence that the defendant acted with intent by deliberately or willfully destroying records. Rorick has no such evidence.

Rorick also suggests that a ruling on this issue is premature, and should await a forensic examination of the computer in question. Silverman's deposition was taken in August, apparently by agreement of counsel as the discovery deadline was July 14. Silverman is now seeking summary judgment on this claim. It is not sufficient at this juncture of the case for Rorick to suggest that further investigation might reveal a disputed issue of fact.

The Court therefore grants Silverman's motion with respect to Rorick's spoliation

of evidence claim.

## CONCLUSION

For all of the foregoing reasons, Defendant's motion for summary judgment (Doc. 37) is granted in part and denied in part. The motion is granted with respect to Plaintiff's spoliation of evidence claim, and that claim is dismissed with prejudice. The motion is denied with respect to the timeliness of Plaintiff's dental malpractice/negligence claims, but is granted with respect to Plaintiff's claim for compensatory damages based on headaches she allegedly experienced as a result of the root canal on tooth #18.

SO ORDERED.

DATED: December 22, 2015          s/Sandra S. Beckwith
                                  Sandra S. Beckwith, Senior Judge
                                  United States District Court